UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHERYL CROCHET, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 22-1103 C/W 23-333** |
| **SEADRILL AMERICAS, INC., ET AL** | **SECTION: "S" (1)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment** (Rec. Doc. 55) filed by defendant LLOG Exploration Company, LLC, allegedly d/b/a LLOG Bluewater Holdings, LLC ("LLOG") is **DENIED**.

## BACKGROUND

This case arises from Christopher Crochet's death by a heart attack while he was aboard the M/V WEST NEPTUNE. Undisputed facts in the record reflect that at approximately 5:30 p.m. on March 18, 2021, Crochet, who was working as a shop technician on the vessel, went to the medic on board complaining of abdominal cramping.[1] Crochet informed the medic that he had a history of experiencing the same symptoms after eating raw or not fully cooked onions, and it was "normal for him."[2] He denied having chest pain, shortness of breath, difficulty

---

[1] Rec. Doc. 55-7, SMS Incident Report, 2-3; Rec. Doc 55-8, U.S. Dept. of Interior Incident Report, 2.

[2] Rec. Doc. 55-7, 2.

breathing, nausea, or vomiting.[3] He was not sweating (non-diaphoretic), and the medic noted good skin color.[4] It was agreed he would report to his room for rest, and the medic would check on him periodically.[5]

Also at approximately 5:30 p.m., Crochet's supervisor informed LLOG foreman John Telano that Crochet had gone to see the medic due to feeling unwell.[6] Telano testified that in his role as foreman, he had the responsibility and practice of getting updates from the medic when someone on the vessel required medical attention.[7] Telano stated that when he learned of Crochet's status at around 5:30, he notified the on-duty LLOG Health, Safety & Environment ("HSE") staffer to check in with the medic and keep an eye on the situation.[8] An hour later, at around 6:30, Telano received a report from the HSE staff that Crochet was feeling better, and being checked on periodically by the medic.[9]

The medic checked on Crochet at 6:00 p.m., 6:30 p.m., and 7:15 p.m.[10] On each occasion,

---

[3] Id.

[4] Id.

[5] Id.

[6] Rec. Doc. 69-1, Telano Depo. 65:20-66:1.

[7] Id. at 27:14-21.

[8] Id. at 66:2-8.

[9] Id. at 66:20-23.

[10] Rec. Doc. 55-8, U.S. Dept. of Interior Incident Report, 2.

Crochet reported that he was feeling better.[11] At 8:00 p.m. the medic went to check on Crochet and found him on the floor, unresponsive and with no pulse.[12] Minutes thereafter, Telano was informed that a medical evacuation ("medevac") was required.[13] At 8:09 p.m., Telano ordered and arranged for an emergency helicopter evacuation of Crochet from the vessel.[14] Extensive resuscitation efforts were undertaken while awaiting the medical evacuation.[15] The emergency helicopter departed Galliano at 8:49 p.m. and arrived on the M/V WEST NEPTUNE at 9:45 p.m.[16] Crochet did not survive, and was pronounced dead at 8:51 p.m.[17]

Plaintiffs Cheryl Crochet and Alexandria Crochet have filed the instant wrongful death and survival lawsuit asserting that LLOG, among other parties, is liable for Crochet's death. They contend that LLOG, through its supervisor, Telano, failed in its duty to provide adequate medical care to Crochet while on board the M/V WEST NEPTUNE.

During the relevant time period, Crochet was employed by Frank's International, LLC ("Frank's International"). Frank's International was performing work for LLOG pursuant to a Master Services Contract with LLOG, in connection with LLOG's work drilling offshore oil

---

[11] Id.

[12] Id., Rec. Doc. 55-7, 3.

[13] Rec. Doc. 55-3, Telano Decl. ¶ 9.

[14] Rec. Doc. 55-8, 2.

[15] Rec. Doc. 55-7, 3-5.

[16] Id.

[17] Rec. Doc. 59-2, Lafourche Parish Coroner's Office Autopsy Report, 8.

wells. LLOG had also contracted with Seadrill Americas, Inc. ("Seadrill") to provide the M/V WEST NEPTUNE, and Seadrill in turn contracted with Safety Management Systems, LLC ("SMS") to provide emergency medical care on board the vessel.

LLOG has moved for summary judgment, arguing that plaintiffs cannot establish that LLOG owed or breached any duty to Crochet, and therefore their claims against LLOG should be dismissed. LLOG contends that it owed no duty to order a medevac prior to being informed by medical personnel that it was necessary, and once so informed by the SMS medical staff, the medevac was immediately ordered. Plaintiffs oppose, contending that Telano should have been more closely involved in the medical monitoring of the deceased, and arranged for a medevac sooner.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882

F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 477 U.S. 242 (1986).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents properly to support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## APPLICABLE LAW

To prevail on a claim of negligence under maritime law, the "plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.' " In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 211 (5th Cir. 2010).

## DISCUSSION

LLOG contends that it had no duty or responsibility to provide, and did not have any actual involvement with, the allegedly deficient emergency medical care that plaintiffs claim caused Crochet's death. Rather, LLOG argues that the decision to medevac an injured worker from the vessel was solely the province of Seadrill, the owner of the M/V WEST NEPTUNE, and Seadrill's independent contactor, SMS, which was retained to provide emergency medical

care for those onboard the vessel. LLOG claims that its sole responsibility with respect to medical care on the M/V WEST NEPTUNE was to arrange medical evacuations when SMS' onboard medic determined that such evacuations should occur. LLOG further argues that when requested to do so, it immediately arranged for the medical evacuation of Crochet.

Plaintiffs oppose, making two main arguments. First, they contend that the sole record evidence to support LLOG's argument that it had no duty is the affidavit of John Telano, and Telano lacks the personal knowledge required to provide this testimony. Second, plaintiffs argue that the contract between LLOG and Seadrill reflects that LLOG retained a duty to participate in the decision of whether and when to medevac Crochet, and he should have been evacuated sooner.

With respect to Telano's affidavit, plaintiffs take issue with his averments regarding the limitations on LLOG's duties under the contract, specifically, that LLOG had no contractual obligation to provide medical evaluations or diagnoses or to participate in the decision-making process to determine when to evacuate a sick or injured person. Plaintiffs argue that Telano testified that he wasn't involved in negotiating the contract, that he was "not a contract person", and that he was unable to opine about contract provisions.

Telano testified that he worked as an LLOG foreman for 17 years, 10 on the M/V WEST NEPTUNE. He kept a copy of the drilling contract in his desk drawer and possessed personal knowledge of LLOG's duties under the contract, because he had to in order to carry out his duties as a foreman. On the whole, his testimony reflects that he had personal knowledge of LLOG's obligations under the drilling contract, and executed them on a daily basis. The court is not

persuaded by plaintiffs' argument that Telano lacked the personal knowledge to provide the testimony in question.

Second, and more substantially, plaintiffs argue that the plain language of the Domestic Daywork Drilling Contract and other documents in the record demonstrate that LLOG's role was not limited to ordering a medevac once informed of the need by Seadrill or SMS medical personnel. Specifically, they point to language which provides:

> 608. Medical Evacuation.
>
> In the event **Operator [LLOG] or Contractor [Seadrill] determines** that due to an injury or illness of any of Contractor's Personnel a helicopter or other evacuation of such Contractor Personnel from the Drilling Unit appears to be necessary, whether or not such injury or illness is Work-related and **regardless of whether the evacuation is initiated by Contractor [LLOG] or Operator [Seadrill]**, Operator shall provide such helicopter or other transportation for such evacuation...[18]

Plaintiffs argue that the highlighted language establishes that the contract contemplates and authorizes LLOG to make the determination that a medevac is necessary and to initiate it. Plaintiffs also emphasize the following from the LLOG Emergency Response and Evacuation Plan: "The decision to Medivac personnel from the facility should be at the discretion of the [Offshore Installation Manager ("OIM")] in consultation with appropriate medical personnel **and the LLOG Company Representative**."[19]

While a contract reserving authority to initiate an evacuation does not necessarily impose a duty to initiate an evacuation, based on the foregoing, the court cannot conclude that LLOG's

---

[18] Rec. Doc. 55-2, LLOG-Seadrill Domestic Daywork Drilling Contract, 11-12.

[19] Rec. Doc. 67-4, LLOG Emergency Response & Evacuation Plan, 12.

role is completely restricted to ordering a medical evacuation only when directed to do so by medical staff. For instance, the court can conceive of a situation where an illness or injury is so extreme and obvious that the need for medical advice to determine whether a medevac required would be unnecessary, and anyone having authority to initiate a medevac would also have a duty to initiate it. Accordingly, summary judgment is not appropriate on the question of duty.

LLOG also argues that whatever duty it may have owed, plaintiffs cannot show that they breached it. According to LLOG, "immediately upon learning that Mr. Crochet required a medical evacuation, Telano arranged for an emergency helicopter evacuation of Mr. Crochet from the WEST NEPTUNE at approximately 2009 hours by contacting Bristow Group, Inc. ("Bristow")."[20] Plaintiffs counter this assertion, emphasizing that "Telano learned at approximately 1730 hours that Christoper Crochet was having a medical event. His failure to properly evaluate and monitor the situation led to him not calling for an emergency helicopter until 2009 hours, after Crochet was found unresponsive."[20] Thus, plaintiffs contend LLOG beached its duty by not involving himself sooner and evacuating Crochet earlier.

In maritime negligence law, "determining whether there was a breach of a duty . . . is a question for the trier of fact." In re Deepwater Horizon, 2011 WL 4829905, at *3 (E.D. La. Oct. 12, 2011), aff'd, 500 F. App'x 355 (5th Cir. 2012) (citing Canal Barge Co. v. Torco Oil Co., 220 F.3d 370, 376 (5th Cir. 2000) (other citations omitted)). Accordingly, the question whether Telano breached any duty LLOG owed to Crochet is reserved for the jury.

---

[20] Rec. Doc. 55-9, LLOG's Statement of Uncontested Facts, ¶ 17.

[20] Rec. Doc. 67-1, Plaintiffs Statement of Genuine Issues of Material Fact, ¶ 17.

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment** (Rec. Doc. 55) filed by defendant LLOG Exploration Company, LLC, allegedly d/b/a LLOG Bluewater Holdings, LLC ("LLOG") is **DENIED**.

New Orleans, Louisiana, this  12th  day of November, 2024.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**